HARDY, Judge.
Plaintiff, alleging that while serving as a depository for an automobile owned by one Robert .D. Travis the said vehicle sustained damages resulting from the negligence of an employee, or former employee, of defendant; that, recognizing its liability, it paid Travis for the repair of the damages sustained to his car, and that it received from him an assignment and subrogation, • instituted this suit against defendant for recovery of the amount paid out. After trial there was judgment in favor of defendant rejecting plaintiff’s demands, from which plaintiff prosecutes this appeal.
Plaintiff operates a sales and service department in connection with its business in the City of Shreveport, and defendant operates an automobile service station under the name of Eddie’s Texaco Service Station. It was plaintiff’s custom on occasions, due to a rush of business, to farm- out, or, in a sense, to subcontract servicing jobs to this defendant. The usual procedure involved the initiation of a telephone call by one of plaintiff’s employees to defendant’s station, which was located some five blocks distant, whereupon defendant, or his assistant station manager, would send a Negro helper to plaintiff’s place of business for the purpose of driving the vehicle in need of servicing to defendant’s station, where the necessary work was performed. Plaintiff contends that this usual procedure was subject to frequent exceptions in that one or another of defendant’s Negro helpers would sometimes stop by plaintiff’s place of business on his way to work, and if there was a car to be serviced they would then drive the same to defendant’s station.
Sometime between 8:00 and 10:00 o’clock, A.M. on the morning of April 20, 1953, one Robert L. Travis left his 1950 Lincoln Sedan at plaintiff’s service department, located at 735 Louisiana Avenue in the City of *107 Shreveport, to be washed and greased. Shortly thereafter, at or about 9:00 o’clock, A.M., a Negro named Willie B. Bradford, wearing cap and coveralls with the name of Eddie’s Texaco Service Station shown thereon, picked up the automobile and drove out of plaintiff’s establishment. Within a matter of some half hour or so Bradford, after joyriding with a female companion, wrecked the Travis automobile, in a collision with a trolley bus, causing damage to the Lincoln Sedan to the extent of something in excess of $576.09, which is the amount sued for. Bradford unceremoniously departed from the scene of the accident and, so far as the record discloses, his whereabouts since that time have remained an impenetrable mystery.
The basis of plaintiff’s claim is that Bradford had been for some time employed by defendant and had on many occasions served as defendant’s agent in calling for and transporting automobiles from plaintiff’s place of business to that of his employer for the purpose of servicing same; that if the said Bradford was not at the time actually employed by defendant plaintiff was without knowledge of such fact; that defendant, Daniel, was under the obligation to notify plaintiff of Bradford’s 'discharge from his employ; that Bradford’s appearance, dress and conduct indicated that he continued in the employ of defendant, and that plaintiff’s action in delivering the automobile to Bradford as an employee of defendant was caused by the negligence of the defendant, for which he should be held liable to the extent of repairing the resulting damage.
Defendant first urges that Bradford was discharged from his employ at the conclusion of his day’s work on Saturday, April 18th, and as a consequence defendant had no connection with nor responsibility for Bradford’s actions in taking possession of the Travis automobile by delivery from plaintiff on Monday, April 20th. Alternatively, defendant contends that if any liability is attached by reason of Bradford’s former status as an employee, he is relieved from liability through application of the theory of unwarranted and unauthorized deviation by an employee from the course and scope of his employment.
As we view the matter the instant case must be determined on the basis of the facts established by the record. There can be no real question as to the fact that Bradford was discharged from defendant’s employment on the night of Saturday, April 18th. According to the defendant’s testimony Bradford, at the time of his discharge, requested permission to wear to his house the-station .uniform in which he had that day reported for work, promising to return the-clothing the next day. This uniform was. one usually supplied by a local laundry, service to operators of service stations, who in< turn furnished them to their employees to-be worn in the course of their work. Admittedly Bradford- and another of defendant’s employees had been accustomed to call at the plaintiff’s service department and transport cars -to defendant’s station for servicing and return such vehicle when the servicing operation had been performed. However, there is a sharp difference of testimony as to the general custom. The defendant and his witness, one Coleman Terry, who, at the time of the accident here involved, was charged with operating the station during defendant’s absence, testified that they knew nothing of the procedure asserted by plaintiff with reference to employees voluntarily stopping by plaintiff’s-station on their way to work for the purpose of picking up a car for servicing. To-the contrary defendant and Terry both testified that the invariable method of handling: this work was to receive a telephone call: from one of plaintiff’s employees, after which they would dispatch one of the station helpers to plaintiff’s service department, for the purpose of transporting such car as-plaintiff wished to turn over to defendant for the performance of the servicing work.. The testimony of two of plaintiff’s employees substantiated its contention andi each of these witnesses testified, with some-slight differences on details, that he remembered the particular occasion, the exact circumstances, under which Bradford took possession of the Travis automobile on the morning of April 20th. In this connection. *108 we are impressed with one unexplained discrepancy, which appears to us to be most important. Plaintiff’s petition made the following pertinent allegation:
“That on said date, April 20, 1953, in pursuance with such custom of petitioner and the said Eddie Daniel, Jr., the Negro helper, Willie B. Bradford, came at about 9:00 o’clock A.M. to petitioner’s service station wearing his usual cap and coveralls with the insignia or name of Eddie’s Texaco Service Station, or similar name printed thereon, and applied to petitioner’s service manager for such automobiles to be serviced by his said represented employer, Eddie Demiel; and petitioner’s service manager delivered the said Lincoln Sedan of the said Robert L. Travis to the said Negro helper to be in turn delivered to his said employer, Eddie Daniel, at 1230 Louisiana Avenue, to be washed and greased, and to be returned as soon as such service was performed; * * (Emphasis supplied.)
Strangely enough, neither of plaintiff’s witnesses, who were at the time of the incident respectively service manager and assistant service manager for plaintiff, testified, nor, indeed, were they questioned in such manner as to bring out the facts we have emphasized in the above quoted allegation.
The service manager, Mr. Floyd Culbertson, after testifying that Mr. Travis brought the Lincoln car in and delivered it to the witness himself, to be washed and greased, gave the following testimony:
“Q. What did you do with the car? A. Turned it over to the colored boy / presumed at the time was working for Eddie’s Texaco Service Station, to carry it to his place to service the car.
“Q. Was his name Willie Bradford? A. Yes, sir.
“Q. You turned it over to him to be „carried where f A. To Eddie’s Texaco .Service Station for servicing.’’ Em- , phasis supplied.)
Implicit in the above testimony is the fact that the witness was acting upon a mere presumption, and it is equally evident, from the form of question and answer, that the purpose of having the car taken to defendant’s station was simply a matter of intention in the witness’ mind only, and nowhere does it appear that he actually gave any directions to Bradford. True, the witness later testified that he knew Bradford and that he had on a Texaco Station uniform at the time. The testimony of this witness is further interesting and enlightening with reference to his statement of the alleged custom of defendant’s employees, and we quote as follows:
“Q. What time of day did he (Willie Bradford) come by there on this particular morning? A. Around 8:00 o’clock.
“Q. Did he come by there about that time each morning to pick up cars? A. Not every morning. But some mornings when he didn’t have transportation to the service station where he worked, he would come by the Goodrich Company on his way to work, and if we had a car for service he would drive it on to work.”
There is nothing in this nor in the testimony of any other witness which indicates in any sense that this action of defendant’s employee or employees, accepting for this purpose that there was such a custom, was authorized or even was known to the defendant. We think it must be concluded under the circumstances that plaintiff’s employees, in delivering automobiles to one or another colored man who was presumed to be working for defendant in the absence of any specific authorization by defendant, must be considered to have been acting on their own responsibility and at their own risk, particularly in view of defendant’s denial of the knowledge of this procedure, to say nothing of his vigorous denial of any authorization thereof.
This idea is reinforced by the testimony of Mr. J. L. Carriere, who was the assistant service manager for plaintiff on April 20, *109 1953. It must unquestionably be resolved from the testimony of this witness that the established custom on an occasion when there was an automobile to be turned over to defendant for servicing was to call defendant’s station and to have him dispatch one of his employees for the purpose of picking up such vehicle. We think it is clear that any departure from this usual and customary procedure was chargeable to plaintiff’s employees and was never approved nor in any manner sanctioned by defendant. We further point out Carriere’s positive testimony that Bradford made no statement to him and that he did not talk to him on the morning of April 20th.
Under our appreciation of the facts above related, which we think are conclusively determinative of the issue presented, there is no need to discuss the possible liability on defendant for failing to notify plaintiff that Bradford had been discharged and was no longer in his employ. Adherence to the usual course of procedure by plaintiff’s employees would have obviated the possibility of the occurrence of the incident which gave rise to this suit. Inasmuch as plaintiff’s employees chose to attach or to presume an authorization of agency to the coincidental appearance of Bradford, the responsibility must fall upon them and not upon the defendant, who was free from any actionable fault under the circumstances. It is further worthy of observation that even if defendant had been under the responsibility of notifying plaintiff of Bradford’s discharge, there would not have been reasonable opportunity to convey such information, since the act of discharge occurred at the close of defendant’s business Saturday night, and, according to plaintiff’s witnesses, the Travis car was delivered to Bradford shortly after they opened for business on Monday morning.
In view of the fact that we have concluded that Bradford at the time was not acting as defendant’s agent, and that he had never been empowered by defendant to transact any business with plaintiff in the manner and under the circumstances surrounding the particular occasion here under consideration, we do not think that the authorities relied upon by learned counsel for plaintiff are apropos. Nor do the provisions of Article 3029 of the LSA-Civil Code, with reference to notice of revocation of an agent’s authority, attach under the circumstances which we have above narrated.
Our finding renders unnecessary a discussion of defendant’s alternative contention predicated upon the application of the doctrine of deviation.
For the reasons assigned the judgment appealed from is affirmed at appellant’s cost.